UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

**LIONEL HUNTER**                      **CASE NO. 3:23-CV-00328**

**VERSUS**                             **JUDGE TERRY A. DOUGHTY**

**T C ENERGY CORP ET AL**            **MAG. JUDGE KAYLA D. MCCLUSKY**

**MEMORANDUM RULING**

Pending before the Court is a Motion for Summary Judgment [Doc. No. 19] filed by Defendants Columbia Gulf Transmission LLC ("Columbia Gulf"), TransCanada USA Services, Inc. ("TC USA"), and TransCanada USA Pipeline Services LLC ("TC USA Pipeline") (collectively, "Defendants"). An Opposition [Doc. No. 24] was filed by Plaintiff, Lionel Hunter ("Hunter"). A Reply [Doc. No. 28] was filed by Columbia Gulf, TC USA, and TC USA Pipeline, and a Sur Reply [Doc. No. 33] was filed by Hunter.

For the reasons set forth herein, the Motion for Summary Judgment filed by Columbia Gulf, TC USA, and TC USA Pipeline is **DENIED**.

**I.     BACKGROUND**

The issue in this case is whether the tort claims of Hunter against Columbia Gulf, TC USA, and TC USA Pipeline are barred because Defendants are statutory employers under La. R.S 23:1061. The answer depends upon the interpretation of a Master Field Services and/or Small Services Agreement[1] ("Agreement"). The Agreement is between TransCanada USA Operations, Inc. ("TC USA Operations"), designated as the "Company", and Universal Plant Services, Inc. ("Universal Plant"), designated as the "Supplier."

---

[1] [Doc. No. 19-4]

Because Columbia Gulf, TC USA, and TC USA Pipeline are not named in the Agreement, said Defendants maintain they are the "Affiliates" of TC USA Operations. The language of the Agreement lists TC USA Operations as the "Company", together with all of its wholly owned subsidiaries, "Affiliates", and partially owned entities for and to whom work is being performed and/or supplied by the Supplier pursuant to the terms of the Agreement.[2]

The term "Affiliate" is defined as "any company, partnership, corporation, or other entity which, directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with such Party.[3] "Control" means "the possession, either directly or indirectly, of the power to direct or cause the direction of the management and policies of relevant company."[4]

Pursuant to the Agreement, Columbia Gulf, TC USA, and TC USA Pipeline claim they were under the control of TC USA Operations, making them an "Affiliate" under the Agreement. Said Defendants argue that, as Affiliates of TC USA Operations, they are immune from Hunter's tort suit because they are statutory employers pursuant to R.S. 23:1061. Said Defendants further argue that the Company, TC USA Operations, through its Affiliate, Columbia Gulf, hired the Supplier, Universal Plant, to perform labor, equipment, materials and other services for the Delhi Compressor Station Unit 801 Ceiling Repair Project.[5] Universal Plant contracted with Mondello Scaffolding and Shoring, Inc. ("Mondello") to construct the scaffolding called for in Release Order 450043524. Hunter worked directly for Mondello at the time of the accident and allegedly

---

[2] [Doc. No. 19-4, p. 2, § 2.1(g)]
[3] [Doc. No. 19-4, p. 2, § 2.1(a)]
[4] [Doc. No. 19-4, p. 2, § 2.1(a)]
[5] [Doc. No. 19-10, Release Order 450043524]

sustained injuries when the end section of a catwalk (which the scaffolding was tied off to) collapsed, causing Hunter to fall.[6]

Therefore, the issue is whether the Defendants are statutory employers of Hunter and Mondello as a result of the Agreement. Hunter argues the Motion for Summary Judgment should be denied because the Declaration of Teresa McNeil[7] is inadequate and should be stricken, Defendants are not parties to the contract and have no immunity, Texas law applies because the choice of law in the Agreement is Texas, and the scaffolding construction for ceiling and roof repair is beyond the scope of work provided for in the Agreement.

## II. LAW AND ANALYSIS

### A. Standard of Review

Summary judgment is appropriate when the evidence before a court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact

---

[6] [Doc. No. 1-1, p. 11, ¶ 16, Petition for Damages]
[7] [Doc. No. 19-3]

by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id.* "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

In evaluating a motion for summary judgment, courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted). While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that a genuine issue of material fact exists. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (emphasis added). "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012) (quoting *Anderson,* 477 U.S. at 248).

Relatedly, there can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322-23. This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323.

### B. Louisiana Worker's Compensation Act ("LWCA")

In accordance with La. R.S. 23:1032, the remedies afforded to an injured employee under the LWCA are "exclusive of all claims, including claims that might arise against his employer, any principal, or an officer, director, stockholder, partner, or employee of such employer or principal under any dual capacity theory or doctrine."

La. R.S. 23:1061 extends the tort immunity to an injured employee's direct employer to a principal, referred to as a "statutory employer." "Principal" is defined as "any person who undertakes to execute any work which is part of his trade, business or occupation in which he was engaged at the time of injury, or which he had contracted to perform and contracts with any person for the execution thereof."[8] R.S. 23:1061 states:

> "[W]hen any 'principal'… undertakes to execute any work, which is a part of his trade, business, or occupation and contracts with any person, in this Section referred to as the 'contractor,' for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal, as a statutory employer, shall be granted the exclusive remedy protections of R.S. 23:1032, and shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him.

Therefore, if Columbia Gulf, TC USA, and TC USA Pipeline are found to be "statutory employers" of Hunter under 23:1061, they would be immune from liability for Hunter's tort claims. In order to be "statutory employers," Columbia Gulf, TC USA, and TC USA Pipeline rely on the terms of the Agreement.

---

[8] R.S. 23:1032(A)(2)

5

**C. Master Field Services and/or Small Construction Services Agreement ("Agreement")**

The Agreement[9] is between TransCanada USA Operations, Inc. ("TC USA Operations"), as the "Company", and Universal Plant Services, Inc. ("Universal Plant"), as the "Supplier." The term "Company" is defined to be TC USA Operations, "together with, as applicable, all of its wholly owned subsidiaries, **Affiliates**, and partially owned entities, for and to whom work is being performed and/or supplied by the Supplier (Universal Plant) pursuant to the terms of this Agreement."[10]

The term "Affiliate" means:

> at any given time, in relation to a Party, any company, partnership, corporation, or other entity which, directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, such Party: where "control" means the possession, either directly or indirectly, of the power to direct or cause the direction of the management and policies of the relevant company, partnership, corporation, or other entity, whether through the ownership or control of voting interests, by contract, or otherwise.[11]

Therefore, to be an "Affiliate," Columbia Gulf, TC USA, and TC USA Pipeline must be "controlled by or under the common control" of TC USA Operations. "Control" means "the possession, either directly or indirectly, of the power to direct or cause the direction of the management and policies of the relevant company."[12] To prove Columbia Gulf, TC USA, and TC USA Pipeline are under the "control" of TC USA Operations, said Defendant submitted the Declaration of Teresa McNeil.[13]

---

[9] [Doc. No. 19-4]
[10] [Doc. No. 19-4, pp. 1-2]
[11] [Doc. No. 19-4, p. 1, § 2.1(a)]
[12] [Id]
[13] [Doc. No. 19-3]

The Agreement also allows any entity that is a "Company" to issue a "Work Authorization" by the "Supplier." A "Work Authorization" is a written document issued by the Company, in the form provided in Schedule "F", or such other form as may be directed by the Company, including a purchase order or a release order, that requests specific Work to be performed and/or supplied by the "Supplier."[14] The Agreement further defines "Work" as "in whole or in part, the performance and supply of the Scope of Work."[15] The "Scope of Work" is defined under the "Agreement" as:

> Supplier will provide services within their most current capabilities that are consistent with any and all needs of Company's compressor operations and reliability group. Such functions shall include the cleaning, disassembly, inspection, repair, reassembly, and return to service of reciprocating engines, compressors and related ancillary equipment (pumps, coolers, turbochargers, piping, mufflers, air intakes, etc.) as well as foundations used to support such equipment. Additional restoration services to be provided will include metal casting and portable machining repairs, engine frame alignment, crankshaft straightening, and parts remanufacturing as well as engineering and welding services, training, root cause analysis, machine shop services and special crane and rigging services required for the lifting, movement and transportation of large equipment. Supplier will also provide, as may be required, troubleshooting, repair and installation services related to pneumatic and electrical control and automation equipment.[16]

The Agreement further allowed the Supplier to have a "Subcontractor." The Agreement states: "The Supplier shall ensure that all Subcontractors are bound by all of the obligations imposed under this Agreement that directly or indirectly apply to the portion of the Work that they are subcontracted to perform and/or Supply.[17]

---

[14] [Doc. No. 19-4, p.4, § 2(ll)]
[15] [Doc. No. 19-4, p.4, § 2(kk)]
[16] [Doc. No. 19-4, p.19, § "A"]
[17] [Doc. No. 19-4, p.6, § 7.2]

On November 21, 2021, Columbia Gulf issued Release Order 450043524 to Universal Plant requesting Universal to provide labor, equipment, materials, and other services for the Delhi Compressor Station Unit 801 Ceiling Repair Project.[18] The Scope of Work in Release Order 450043524 called for Universal to provide scaffolding, labor, and materials to conduct the ceiling repairs at Unit 801.[19]

Universal Plant contracted with Hunter's direct employer, Mondello, to construct the scaffolding called for in Release Order 450043524. Mondello was providing the scaffolding services at the time of Hunter's accident.[20] Columbia Gulf, TC USA, and TC USA Pipeline aver that they are statutory employers of Mondello and/or Hunter as a result of the above described language in the Agreement, along with the following language in the Agreement in Section 19.1(d):

> In all cases where the Supplier's employees (**defined to include the Supplier's** direct, borrowed, special, or **statutory employees**) are covered by the Louisiana Worker's Compensation Act, La. R.S. 23:1021 et seq., the Company and the Supplier agree that all the Work and operations performed by the Supplier and its employees pursuant to this Agreement are an integral part of and are essential to the ability of the Company to generate the Company's goods, products and services for purposes of La. R.S. 23:1061(A)(1). **Furthermore, the Company and the Supplier agree that the Company is the principal or statutory employer of the Supplier's employees for purposes of La. R. S. 23:1061(A)(3).**

D. **Declaration of Teresa McNeil**

In the Declaration of Teresa McNeil ("McNeil"),[21] McNeil declared she was the Manager of USA Contracting East for TransCanada USA Pipeline Services, LLC. She declared she was familiar with the corporate structure of TC USA Pipeline, its present corporation, TC Energy

---

[18] [Doc. No. 19-10]
[19] [Id]
[20] [Petition for Damages, Doc. No. 1-1, ¶ 9]
[21] [Doc. No. 19-3]

8

Corporation as well as its subsidiaries and Affiliates, including Columbia Gulf, TC USA, and TC USA Pipeline.

McNeil further declared that Columbia Gulf, TC USA, and TC USA Pipeline are under the control of TC Energy Corporation. McNeil also declared that Columbia Gulf owned and operated the Delhi South Compressor Station in Delhi, Louisiana. Finally, McNeil declared she had reviewed the Agreement, all Change Orders, and Amendments and that the Agreement attached was in full force and effect on February 28, 2022.

Defendants attack the Declaration of Teresa McNeil on the basis that McNeil does not have either personal or corporate knowledge of the legal relationship and control between the Defendants, that her statements relating to "control" are conclusory, and that McNeil was improperly coached during her deposition. Defendants further attach a copy of excerpts of McNeil's deposition.[22]

Hunter argues that McNeil did not have the personal or corporate knowledge necessary to support her declaration. In her deposition, McNeil testified she did not know what the legal relationship was with regard to any of the entities at issue.[23] However, McNeil later testified she talked with a paralegal with Corporate Secretarial named "Diane" that explained and showed her the work charts demonstrating the relationships between the various entities at issue. The deposition of McNeil took place on October 19, 2023, (a Thursday) and she met with Diane on the Monday before that,[24] which would have been Monday, October 16, 2023. McNeil's Declaration was signed on August 2, 2023, which would have been over two months <u>before</u> she met with Diane regarding the corporate work charts.[25]

---

[22] [Doc. No. 24-5]
[23] [Doc. No. 24-5, p. 26, lines 1-4]
[24] [Id at pp. 29-30]
[25] [Doc. No. 19-3, p. 5]

Hunter also argues that McNeil was improperly coached during her deposition. In her deposition, McNeil was testifying regarding her knowledge of the flowcharts of the relationships between the various entities and stated that she did not know who created the work charts. Defendant's attorney asked to take a five-minute break during the deposition to consult with McNeil.[26] Hunter's attorney objected. After the break, McNeil stated she was clarifying her testimony and explained that she met with Diane of Corporate Secretarial to discuss the work charts she had received.[27]

It is clear based on the deposition that McNeil did not have personal knowledge of the legal relationship and control between the Defendant entities. The only question is whether she had "corporate" knowledge. McNeil was designated as a corporate representative of Defendants in accordance with Fed. Rules of Civil Procedure Rule 30(b)(6). In a Rule 30(b)(6) deposition, the representative does not give personal opinions but gives the corporation's "position" on the topic.[28] The deponent can prepare for the corporate deposition from documents, past employers, or other sources.[29]

At the time McNeil made her Declaration on August 2, 2023, she had neither personal nor corporate knowledge of the "control" issue between the relevant entities. She acquired the knowledge based upon the work charts she obtained from the paralegal named Diane on October 16, 2023, a few days prior to her deposition. Obtaining this information would be appropriate since McNeil was a corporate representative.  However, because she did not have either personal or corporate knowledge of the control issue when she signed the Declaration on August 2, 2023, her declaration that Columbia Gulf, TC USA, and TC USA Pipeline were under the control of

---

[26] [Id at pp. 25-26]
[27] [Id at p. 27]
[28] *Brazos River Authority v. G.E. Ionics, Inc*, 469 F.3d 416, 433 (5th Cir. 2006).
[29] [Id]

TC Energy Corporation is conclusory. Therefore, the Declaration of McNeil will not be considered by this Court in Defendants' Motion for Summary Judgment.[30]

### E. Scope of Work

Hunter argues the ceiling repairs of the roof at the Delhi Compressor Station are not within the scope of work in the Agreement. The "Scope of Work" is defined as follows under the Agreement:

> Supplier will provide services within their most current capabilities that are consistent with any and all needs of Company's compressor operations and reliability group. Such functions shall include the cleaning, disassembly, inspection, repair, reassembly, and return to service of reciprocating engines, compressors and related ancillary equipment (pumps, coolers, turbochargers, piping, mufflers, air intakes, etc.) as well as foundations used to support such equipment. Additional restoration services to be provided will include metal casting and portable machining welding services, training, root cause analysis, machine shop services and special crane and rigging services required for the lifting, movement and transportation of large equipment. Supplier will also provide, as may be required, troubleshooting, repair and installation services related to pneumatic and electrical control and automation equipment.[31]

Although roof repairs are not specifically listed in the Scope of Work, the first sentence of the Agreement states: "Supplier will provide services within their most current capabilities that are consistent with any and all needs of the Company's compressor operations and reliability group."[32] This Court finds that this expansive language is enough to include roof repairs within the Scope of Work.

---

[30] Although this determination is enough to DENY the Defendants' Motion for Summary Judgment, because Defendants will likely file another motion, the Court will address Hunter's other arguments.
[31] [Doc. No. 19-4, Schedule "A"]
[32] [Doc. No. 19-4, p. 19, (1.1) Overview of the Work]

### F. Parties to the Agreement

Hunter argues the Defendants, Columbia Gulf, TC USA, and TC USA Pipeline are not parties to the Agreement and therefore have no immunity. However, as discussed previously, Columbia Gulf, TC USA, and TC USA Pipeline would be Affiliates under the Agreement if they are "directly or indirectly" through one or more intermediaries, controlled by or under the common control of TC USA Operations.

Therefore, if Columbia Gulf, TC USA, and TC USA Pipeline are determined to be "Affiliates" under the Agreement, they are considered parties to the Agreement.

### G. Texas or Louisiana Law

Hunter lastly argues that the Agreement is governed by Texas, not Louisiana law. The provisions of the Agreement state:

#### 28. LAW

**28.1** The law applicable in the State of Texas governs this Agreement and any actions initiated by either Party, including, without limitation, the Uniform Commercial Code as in effect, without giving effect to any choice or conflict of law rules or provisions thereof that may direct the application of the law or rules of another jurisdiction.

**28.2** The parties irrevocably consent to the exclusive jurisdiction of the courts of the State of Texas located in Harris County or the United States District Court for the Southern District of Texas in Houston, Texas for any claim arising out of or related to this Agreement and irrevocably were, to the fullest extent permitted by law, and assertion of inconvenient or inappropriate forum or other objection respecting conflict of law.[33]

---

[33] [Doc. No. 19-4, pp 16-17, §§ 28.1 and 28.2]

However, these choice of law provisions only apply to contractual disputes between parties and not to tort claims brought by third parties.[34]

Therefore, Texas' choice of law provisions does not apply to Hunter's tort claims.

### III. CONCLUSION

Because this Court has determined the McNeil Declaration is conclusory (and will not be considered), Defendants are unable to prove that Columbia Gulf, TC USA, and TC USA Pipeline are statutory employers. Therefore,

**IT IS ORDERED** that the Motion for Summary Judgment [Doc. No. 19] filed by Columbia Gulf, TC USA, and TC USA Pipeline is **DENIED.**

MONROE, LOUISIANA, this 5th day of March 2024.

_____
**TERRY A. DOUGHTY, JUDGE**
**UNITED STATES DISTRICT COURT**

---

[34] *Benchmark Elecs. Inc. v. J. M. Huber Corp.*, 343 F.3d 719, 726-27 (5th Cir. 2003); *McCann v. Best Buy Co., Inc.*, 2018 WL 3244999 at 4 (M.D. La. July 3, 2018); and *English v. Apache Corp.*, 2011 WL 3352011 at 4 (E.D. La. August 3, 2011).